# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

RITA L. BIERI,                          :

     Plaintiff,                      :

                                          Case No. 3:07CV0231

 vs.                                 :

                                          District Judge Thomas Rose

MICHAEL J. ASTRUE,                      :       Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                :

     Defendant.                      :

## REPORT AND RECOMMENDATIONS[1]

## I.      INTRODUCTION

Plaintiff Rita L. Bieri has numerous health problems including a lumbar spine impairment, headaches, depression, gastro-esophageal acid reflux, foot pain, and muscle spasms.  (Tr. 65). In September 2004 Plaintiff's health problems prevented her from performing her job in customer service for a durable medical equipment company.  (Tr. 54-55; 303-05).  Nearly one year later she sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB) and by applying, on August 2, 2005, for Supplemental Security Income (SSI).  In both applications she asserted a disability onset date of September 10, 2004.  (Tr. 48).

After various administrative proceedings in the State of New York,

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Administrative Law Judge (ALJ) Alfred R. Tyminski denied Plaintiff's DIB and SSI applications based on his conclusion that Plaintiff was "not disabled" within the meaning of the Social Security Act.  (Tr. 28).  The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration.  Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision and a remand to the Social Security Administration for payment of benefits.  The Commissioner seeks an Order affirming the ALJ's decision.

## II.    BACKGROUND

### A.    <u>Plaintiff and Her Testimony</u>

Plaintiff earned a high school diploma, and she studied nursing for 1½ years in college.  (Tr. 302).

Plaintiff testified during the ALJ's hearing that she last worked in August 2004 as a customer service representative in the durable medical equipment field.  (Tr. 303).  Her job duties consisted of "answering the phone..., placing the orders, having the orders delivered...."  (Tr. 304).  Her previous job involved similar work for a different durable

medical equipment company but also required her to lift and carry 20 to 30 pounds.  (Tr. 304-05).  Before that job, 2002 to 2003, she had performed clerical support for a mortgage company.  (Tr. 306-07).

Plaintiff testified she moved from Florida to New York in September 2003 due to the heat and after being fired from her last job.  (Tr. 311-12).  Plaintiff explained that she "could not hold a job" (Tr. 312) and her employment has been terminated "[p]retty much every time [she's] had a job."  (Tr. 329).  The longest she held a single job was 1 year and 3 or 4 months.  (Tr. 329).  She testified, "I have kind of a bad attitude about what a supervisor will tell me what to do or it has to be done this way and I can't , I don't know why but I can't seem to control when I thinks it's, excuse the language, bull[_ _ _ _].  That's what I say and that tends to make them mad."  (Tr. 330).  She explained that she has had an episode like this at every job she has held.  (Tr. 331).

At the time of the ALJ's hearing, Plaintiff was seeing a mental health therapist, Ms. Fin, every two weeks.  (Tr. 328).  Plaintiff explained that depression would cause her to sit and cry for no reason and to yell at her family and/or co-workers.  (Tr. 332).  Medication (Adderall) has helped with her depression.  (Tr. 333).  She also explained that she had been recently diagnosed with ADD (Tr. 313), presumably attention deficit disorder.

Plaintiff's daily activities included getting her step-children ready and taking them to school, taking her step-children to medical appointments, and preparing dinner.  (Tr. 316-22).  At one point, she did not have a car and took the bus.  A lot of her daily time

3

was spent waiting for buses.  (Tr. 316-17).  After her cousin bought her a car, Plaintiff would drive to the grocery store, but does not drive much due to the high cost of gasoline. (Tr. 319-20).  In the evenings, after dinner, Plaintiff is exhausted and does not "do a whole lot of anything else."  (Tr. 322).  She watches television.  She has difficulty talking on the phone because she cannot hold the phone to her head due to nerve damage in her neck and constant tingling in her fingers.  (Tr. 322).

At the time of the ALJ's hearing, Plaintiff primarily saw physicians for pain medication due to pain in her lower back, feet, and neck. (Tr. 335).  She also takes medication for migraine headaches.  *Id*.  She was on Verapamil and Imitrex for her migraines, which occurred once or twice a month.  *Id*.

Plaintiff testified that she could stand for 1 to 2 hours and could walk 3 to 4 blocks. (Tr. 336).  She also indicated that she had nerve damage in her neck that causes constant tingling in her fingers.  (Tr. 322).  If she tried to write or do other normal things with her hands, they start hurting and she would have to stop.  (Tr. 322-23).  She also has problems holding objects with her right hand.  (Tr. 336).  This problem has gotten worse over the 2 to 3 years before the ALJ's hearing.  (Tr. 338).  She takes Elavil, Motrin and Flexeril to deal with the pain in her right hand and arm.  (Tr. 338).  She believed she could lift up to 20 pounds, but not repetitively; she can carry her purse, which weighs about three or four pounds but must keep switching the side she carries it on.  (Tr. 337). She has difficulty going up or down stairs due to "[a] lot of pain" especially in her knees. *Id*.  She can sit for 1½ hours in a padded chair but needs to keep moving; she can sit in a

hardbacked chair for 30 minutes.  (Tr. 339).

Plaintiff explained that surgery has been recommended for her neck, right elbow, and wrist.  (Tr. 338).  At the time of the ALJ's hearing, an EMG was scheduled to determine if any surgery was needed in any other area.  (Tr. 338-39).  Plaintiff also has difficulty "bending over and standing back up."  (Tr. 340).

### B.   Medical Source Opinions

Plaintiff relies on the opinions of Dr. Buchan, who opined in May 2006 that Plaintiff's symptoms would interfere periodically with her attention and concentration, and that she would be capable of coping with no more than moderate stress in the workplace.  (Tr. 290).  Dr. Buchan diagnosed chronic low back pain, adult attention deficit disorder, depression, carpal tunnel syndrome, gastro-esphogeal reflux disorder, and migraines.  (Tr. 285).  Dr. Buchan estimated that in an 8-hour day, Plaintiff could sit for 8 hours, although not continuously, and she could stand/walk for 4 hours.  (Tr. 287). Dr. Buchan also believed that she could lift or carry up to 10 pounds occasionally and 5 pounds frequently, and she would have moderate limitations in grasping, gripping, or twisting objects with her right hand but no limitations with her left hand.  (Tr. 288).

Plaintiff also relies on the opinions of Elizabeth Finn, a nurse practitioner in psychiatry, and Jeanine Bordonaro, Ph.D., a collaborating psychiatrist.  In September 2005 Ms. Fin and Dr. Bordonaro diagnosed plaintiff with post-traumatic stress disorder, major depressive disorder, and attention deficit disorder (Tr. 228),  for which they provided ongoing therapy and medication treatment.  *Id*.  Plaintiff treated primarily with

5

Ms. Finn who completed a form in September 2005.  (Tr. 245-52).  Dr. Bordonaro signed

the form as a collaborating M.D.  (Tr. 252).  The form indicates that Plaintiff was

markedly limited in the following mental-work abilities: the ability to understand and

remember detailed instructions; the ability to concentrate for extended periods; the ability

to accept instructions and respond appropriately to criticism from supervisors; the ability

to get along with co-workers or peers without distracting them or exhibiting behavioral

extremes.  (Tr. 247-48).  Ms. Finn also believed that Plaintiff would experience episodes

of deterioration in a work setting.  (Tr. 250).  She explained that Plaintiff had difficulty

time in a work setting "due to her inability to regulate her moods and low frustration

tolerance."  *Id*.  Ms. Finn also opined that Plaintiff could tolerate moderate work stress,

noting, "Through psychotherapy and adjunctive medication, [Plaintiff] can have a

reasonably stable lifestyle overtime.  Her verbalized chronic pain is more of an

impairment on her ability to work."  (Tr. 251).

Psychologist Dr. Shapiro evaluated Plaintiff on one occasion in May 2005.  (Tr.

194-98).  Plaintiff told Dr. Shapiro that she had last worked in customer service in

February 2005, but was fired due to her "attitude."  (Tr. 194).  She explained that she

snapped at people if anyone interrupted her while she was working.  (Tr. 195).  But she

also stated that she always enjoyed working in a high stress, demanding position, and was

never been fired for her work performance, "only for her 'attitude.'"  *Id*.  She reported

that she was unable to work at that time due to back problems.  (Tr. 194).

Dr. Shapiro summarized his opinions as follows:

Vocationally, the claimant appears to be capable of understanding and following simple instructions and directions.  Barring any medical contraindications, she appears to be capable of performing simple and complex tasks with supervision and independently.  She appears to be capable of maintaining attention and concentration for tasks.  She appears to be capable of learning new tasks.  She appears to be capable of making appropriate decisions.  She appears to be able to relate to and interact appropriately with others.  She appears to be capable of dealing with at least a moderate amount of stress.

Results of examination suggest no significant psychiatric problems.  There was no evidence of adult ADD, but this should probably be further evaluated by a neurologist.  It is of note that she was able to complete two years of college, and to successfully be employed in positions that would require concentration in the ability to stay focused, like loan processing.

(Tr. 197).


## III.    ADMINISTRATIVE REVIEW

### A.    "Disability" Defined and the Sequential Evaluation Process

The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v.*

*Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[2] Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### B.   The ALJ's Decision

At Step 2 of the sequential evaluation, the ALJ found that Plaintiff "has probable attention deficit disorder ("ADD"), a depressive disorder, a herniated disc and meningeal

---

[2] The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations. Plaintiff met the insured-status requirement for DIB eligibility through December 31, 2009. *See Colvin*, 475 F.3d at 730.

cyst at C5-6 without cervical cord compression and a meningeal cyst at L5-S1...." (Tr. 21). The ALJ concluded at Step 3 that Plaintiff did not have an impairment or a combination of impairments that meet or medically equal an impairment in the Listings. (Tr. 25).

> At Step 4, the ALJ assessed Plaintiff's Residual Functional Capacity as follows:
>
> > [T]he claimant has the residual functional capacity to: lift/carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8 hour workday, stand/walk for 6 hours in an 8 hour workday and can occasionally engage in postural activities. As to her mental residual functional capacity, the undersigned finds that the claimant is able to understand, remember and carry out simple and detailed instructions, respond appropriately to supervision, coworkers and usual work situations, and deal with changes in a routine work setting.

(Tr. 25). The ALJ also determined at Step 4 that Plaintiff's medically determinable impairments could reasonably be expected to produce only some of the alleged symptoms, but Plaintiff's statements concerning intensity, persistence and limiting effects of theses symptoms were not entirely credible. (Tr. 25).

The ALJ's credibility findings, his assessment of Plaintiff's Residual Functional Capacity, and the additional findings in Steps 1 through 4 of his sequential evaluation, led him to conclude that Plaintiff could perform her "past relevant work as a loan processor, customer service representative for health care providers, and a small business manager." (Tr. 28). The dispositive nature of this conclusion at Step 4 ended the ALJ's sequential evaluation and resulted in the ALJ's ultimate finding that Plaintiff was not under a disability and hence not eligible for DIB or SSI. (Tr. 28).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines:  whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria."  *Bowen v. Comm'r. of Soc. Sec*., 478 F3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)).  It consists of "more than a scintilla of evidence but less than a preponderance..."  *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). And the required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings.  *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence."  *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's

10

factual findings.  *See Bowen*, 478 F3d at 746.  This occurs, for example, when the ALJ

has failed to follow the Commissioner's "own regulations and where that error prejudices

a claimant on the merits or deprives the claimant of a substantial right."  *Bowen*, 478 F.3d

at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

## V.    DISCUSSION

### A.    <u>Residual Physical Functional Capacity</u>

Plaintiff contends that the ALJ's assessment of her ability to perform a limited

range of light work was based on a legally improper rejection of the opinions of her

treating physician Dr. Buchan and was not supported by substantial evidence.  Plaintiff

argues in part that the ALJ "should have been well aware that Dr. Buchan was one of

[Plaintiff's] treating physicians at SUNY...."[3]  (Doc. #7 at 12).  She emphasizes that

although Dr. Buchan was one of several physicians who treated Plaintiff at SUNY

medical center, he was the "head doctor," not a resident, and he therefore completed the

Questionnaire upon which she relies.  *See id*. at 11-12.  These contentions lack merit.

As the ALJ noted in his decision, the record contains no treatment records from

Dr. Buchan.  (Tr. 22).  All the transcript pages that Plaintiff has cited from the SUNY

outpatient clinic do not mention Dr. Buchan. *See* Doc. #7 at 11-12.  Moreover, contrary to

Plaintiff's suggestions, the record do not mention that any of the doctors Plaintiff saw at

the SUNY clinic were resident doctors; if they were resident doctors and Dr. Buchan was

---

[3]  Referring to the State University of New York medical center.

the "head doctor," as Plaintiff suggests (Doc. #7 at 11-12), Dr. Buchan's name would certainly appear near or under the resident doctor's name – which did not occur in the treatment notes.  In light of this, there was substantial evidence to support the conclusion that Dr. Buchan was not Plaintiff's treating physician.  *See Smith v. Comm. of Social Security*, 482 F.3d 873, 876-77 (6th Cir. 2007); *see also* 20 C.F.R. §§416.902 (treating source has an ongoing treatment relationship with the patient; Social Security Administration will not consider a physician to be a treating source if the relationship with the physician is based solely on the claimant's need to obtain a report in support of his disability claim).

In any event, the ALJ considered Dr. Buchan's report and credited some weight to her opinion, but did not accept the portions of her opinion which were not supported by the record.  (Tr. 25-27).  Specifically, Dr. Buchan opined that Plaintiff could sit 8 hours during an 8-hour workday, stand/walk 4 hours in an 8-hour workday, and lift/carry up to 10 pounds.  (Tr. 288).  While the ALJ accepted Dr. Buchan's opinion that Plaintiff could sit 8 hours, he did not accept her opinion that Plaintiff could stand/walk for 4 hours or lift/carry 10 pounds.  (Tr. 27).  As the ALJ indicated in his decision, contrary to these later findings, Plaintiff's clinical findings consistently showed no significant neurological deficits and established no gait or station abnormalities.  (Tr. 25).  In fact, every doctor who clinically examined Plaintiff found her to have normal gait and stance, normal strength in both her upper and lower extremities, and normal grip strength.  (Tr. 190, 200-02).  And as the ALJ found, Plaintiff testified she could lift up to 20 pounds.  (Tr. 26;

12

*see* Tr. 337).  This evidence supports the ALJ's conclusion that Plaintiff could walk/stand at least 6 hours in an 8-hour workday and could lift more than 10 pounds and up to 20 pounds.

Instead of making any mention of these normal clinical examination findings, Plaintiff focuses on diagnostic study reports (MRI studies, etc).  *See* Doc. #7 at 12.  What she fails to mention is that no physician – not even Dr. Buchan – relied on any of these studies as support for any functional limitations.  In fact, Dr. Buchan only cited one of these reports (an MRI study – while not specifying whether it was the cervical or lumbar MRI), but she only cited to the MRI report to support her diagnosis of chronic back pain *See* Tr. 285.  She did not cite to any of these diagnostic studies in support of her assessment of Plaintiff's functional limitations.

Plaintiff also overlooks that fact that her treating physician, Dr. Lehmann, reviewed her MRI reports and was made well aware of her MRI findings, including her meningeal cysts, but Dr. Lehmann noted that Plaintiff, herself, reported that she was "actually doing very well" on her medications and her back pain had "improved significantly."  (Tr. 232).  Plaintiff also overlooks Dr. Buchan's similar estimate of Plaintiff's pain levels at 0 on a 0-to-10 scale, meaning Dr. Buchan believed that Plaintiff was experiencing no pain.  *See* Tr. 287.  Moreover, contrary to Plaintiff's allegations of having any kind of disabling neck limitations, Dr. Buchan opined that Plaintiff's condition did not interfere with her ability to keep her neck in a constant position (*e.g*., looking at a computer screen, looking down at desk) (Tr. 289).

The ALJ also provided Plaintiff with the benefit of doubt by not only limiting her to her past relevant work which she performed at the light level, but also finds her capable of performing her past relevant work as it is performed generally – which is at the sedentary level. *See* Tr. 28 (Finding #6). Thus, even Dr. Buchan's assessment supports the ALJ's alternative step four finding that Plaintiff could perform her past work at the sedentary level. Accordingly, even if one were to give Plaintiff every benefit of the doubt and find her limited to sedentary work (which is consistent with Dr. Buchan's assessment), substantial evidence would still support the ALJ's step four finding that Plaintiff could physically perform her past relevant work.

Lastly, even if the ALJ erred as a matter of law by not applying the correct legal criteria to fully credit Dr. Buchan's opinions, a review of this physician's opinions reveals that such error was harmless. This is so because Dr. Buchan indicated her opinion by checking lines or circling numbers without providing any meaningful supporting explanation. *See* Tr. 285-92. Consequently, Dr. Buchan's opinions were "so patently deficient that the Commissioner could not possibly credit it..." in full, thus rendering harmless any legal error the ALJ committed when weighing those opinions. *See Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 547 (6th Cir. 2004).

Accordingly, Plaintiff's challenges to the ALJ's review of Dr. Buchan's opinions lack merit.

### B.  <u>Plaintiff's Mental Work Abilities</u>

Plaintiff argues that the ALJ improperly found that she could mentally perform the

14

demands of her past work.   As with Plaintiff's claims related to her physical condition,

her claims in this regard are also not borne out by the record.

Plaintiff does not mention that she acknowledged to consultative psychologist Dr.

Shapiro that she could not work because of her back problems – not because of any

mental functioning problem.  *See* Tr. 194.  Also in conflict with her emphasis on her adult

attention deficit disorder (ADD), she told Dr. Shapiro that she "always enjoyed working

in a high-stress, demanding position, and [had] never been fired for her working

performance, only for her '[bad] attitude.'"  (Tr. 195, 199, 214).  And, as the ALJ

correctly indicated her past jobs required the ability to concentrate and focus.  (Tr. 24).

Plaintiff overlooks this evidence and instead equates having a "bad attitude" with the

symptoms of adult ADD.  *See* Doc. #7 at 14.  Yet, the record indicates that Plaintiff has

described her bad attitude symptoms as snapping at people if anyone would interrupt her

while she was working (Tr. 195) and as responding to others at work with sarcasm and

quarrelsome behaviors  (Tr. 217).  The Diagnostic & Statistical Manual of Mental

Disorders (DSM-IV) shows that none of Plaintiff's self-described symptoms of her bad

attitude equated with the DSM-IV's description of the "inattention" symptoms of ADD

(i.e., often fails to give close attention to details or makes careless mistakes in work, or

other activities; often has difficulty sustaining attention in tasks; often does not seem to

listen when spoken to directly; often does not follow through on instructions and fails to

finish chores, or duties in the workplace (not due to oppositional behavior or failure to

understand instructions); often has difficulty organizing tasks and activities; often avoids,

dislikes, or is reluctant to engage in tasks that require sustained mental effort; often loses things necessary for tasks or activities; is often easily distracted by extraneous stimuli; and is often forgetful in daily activities.  *See* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at p. 92  ("DSM-IV-TR").  As described above, Plaintiff acknowledged that she was able to perform these mental abilities in her past jobs. Also inconsistent with Plaintiff's claims that she could not work due to adult ADD were the repeated notations in the records that her ADD symptoms were "well controlled" on Adderall XR and that she was responding "very well" to treatment, as the ALJ recognized.  *See* Tr. 24 195, 223, 229.  In response to these finding cited by the ALJ, Plaintiff claims that a medically stable ADD is not inconsistent with having active depression.  (Doc. #7 at 16).  In particular, she challenges the ALJ's citation to Dr. Tamburini's notes that her depression was stable on Celexa, calling Dr. Tamburini's notation merely a "passing" comment.  *Id*. (citing Tr. 235).  What Plaintiff fails to mention, however, is that her treating psychiatric nurse made findings consistent with Dr. Tamburini; Ms. Finn also found that Plaintiff responded "very well" to treatment (both Adderall and Celexa) (Tr. 223).  In fact, after only one month of treatment, Plaintiff, herself, reported improvement in her symptoms.  (Tr. 195).  Contrary to Plaintiff's assertions, this evidence is not irrelevant.  *See* 20 C.F.R. §416.929(c)(iv)(in evaluating the severity of a claimant's pain and other symptoms, the ALJ must consider what medication a claimant has received to alleviate his or her pain or symptoms).

The ALJ also properly discounted Ms. Finn's opinions that conflicted with

Plaintiff's own statements and her good response to treatment and medications.  *See* Tr.

27.  As the ALJ indicated, Ms. Finn was a nurse and a counselor and, as such, was not an

acceptable medical source.  *See* 20 C.F.R. §416.913(a) (acceptable medical sources

include licensed physicians, psychiatrists, and psychologists, not nurses or counselors).

And as the ALJ indicated, Ms. Finn's counseling sessions dealt mostly with Plaintiff's

family issues and not with her alleged working difficulties.  (Tr. 24, 267-84, 293-97).

The ALJ also reasonably found that despite Dr. Bordonaro's signature on some of Ms.

Finn's reports, there was no evidence in the record that Dr. Bordonaro ever saw or

evaluated Plaintiff in person.  (Tr. 24).  Corroborating this fact are Plaintiff's own

statements to Dr. Shapiro, that she was treating with Ms. Finn, a psychiatric nurse and

counselor.  (Tr. 194).  Plaintiff did not tell Dr. Shapiro that she was treating with Dr.

Bordonaro.  (Tr. 194).  Plaintiff testified similarly at the ALJ's hearing by explaining that

she treated with therapist Ms. Finn and that Ms. Finn prescribed her medication.  (Tr.

323).  She explained that Ms. Finn worked at the same clinic as Dr. Bordonaro, at

Associates in Psychiatry (Tr. 324).  Accordingly, the mere signature of Dr. Bordonaro, a

non-treating source, did not require the ALJ to credit Ms. Finn's opinions.

In light of the above-noted evidence, the ALJ reasonably gave some weight to the opinion

of consultative psychologist, Dr. Shapiro – particularly his observation that Plaintiff did

not have any significant limitation on her mental work abilities.  *See* Tr. 24; *see also* Tr.

197.  Again, however, to give Plaintiff every benefit of doubt, the ALJ found that Plaintiff

had ADD and depression, but that in light of the evidence those impairments did not

17

prevent her from performing the mental demands of her past relevant work.  (Tr. 24-27).

Dr. Shapiro's opinions constituted substantial evidence supporting these conclusions.

Accordingly, Plaintiff's contentions concerning the ALJ's assessment of her

mental work abilities lack merit.

### C.   <u>Plaintiff's Credibility</u>

Plaintiff contends that the ALJ erred in finding her testimony to lack credibility.

She reasons that the ALJ's reference to her daily activities was "wholly irrelevant or

downright illogical." *See* Doc. #7 at 18.  This reasoning, however, overlooks that the

Regulations required the ALJ consider Plaintiff's daily activities.  *See* 20 C.F.R.

§416.929(c)(v) (in evaluating the severity of a claimant's pain and other symptoms, the

ALJ will consider what daily activities a claimant engages in).  Plaintiff's daily activities,

moreover, tends to support the ALJ's credibility conclusion, particularly her ability to

care for four young children (ages 6, 8, 10, and 12).  The ALJ properly found her

testimony about her impairments to be inconsistent with the work abilities such

caretaking typically reflects.  *See* Tr. 25-26.

Next, Plaintiff argues that the ALJ's finding that she her completion of two years

of college required concentration at odds with her present claim ... is simply ludicrous."

(Doc. #7 at 19).  Yet, this was one relevant factor, among many others, that the ALJ

properly considered, and the ALJ's reference to it was especially proper in light of

Plaintiff's alleged periods of forgetfulness (among other problems) for most of her life,

not just after her alleged disability onset date.  *See, e.g.,* Tr. 214.

18

Plaintiff next challenges the ALJ's finding that she lost jobs due to having a bad attitude and not due to an mental impairment. This challenge lacks merit because it is based on her attempt to equate having a bad attitude with the symptoms of ADD. She does not rely on a medical source that believed her bad attitude at work constituted a symptom of ADD. And again, as stated above, her bad attitude symptoms are not at all described by the DSM-IV's diagnostic criteria for ADD. *See* DSM-IV-TR at p. 92. Plaintiff also overlooks that she reported to Dr. Shapiro that she "always enjoyed working in a high-stress, demanding position, and [had] never been fired for her working performance, only for her 'attitude.'" (Tr. 195).

Tellingly, Plaintiff also makes no attempt to challenge the ALJ's finding that despite asserting that she had chronic low energy, she acknowledged to Ms. Finn that she was so busy in her life that she did not have time to clean her house. (Tr. 24, 272). She also ignores her own reports (and that of Ms. Finn) that her ADD was well-controlled with medication. *See* Tr. 223, 229. And, again, Plaintiff told Dr. Shapiro that she could not work because of her back – not because of any mental impairment. *See* Tr. 194. This inconsistency further undermines her credibility.

Accordingly, substantial evidence supports the ALJ's credibility determinations.

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's final non-disability determination be affirmed; and

2.      The case be terminated on the docket of this Court.

August 13, 2008                          s/ Sharon L. Ovington
                                    Sharon L. Ovington
                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).